# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUGO RAMIREZ-DUENAS, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VF OUTDOOR, LLC, a Delaware limited liability company; and DOES 1 through 100,<br><br>Defendant. | **CASE NO. 1:17-CV-0161-AWI-SAB**<br><br>**ORDER REQUIRING DEFENDANT TO EITHER SUBMIT ADDITIONAL BRIEFING AND EVIDENCE OR TO DECLINE TO DO SO.**<br><br>**(Doc. 8).** |

## I. Introduction

Plaintiff Hugo Ramirez-Duenas ("Plaintiff") brings this putative class action on behalf of himself and fellow employees alleging various violations of the California Labor Code by their employer, Defendant VF Outdoor, LLC ("Defendant"). This action was originally filed in the Tulare County Superior Court on December 7, 2016. Doc. 1-1, Complaint ("Compl.") at 3. Defendant removed the action on February 2, 2017, contending that this Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), because (1) it involves 100 or more putative class members, (2) minimal diversity exits between the parties, and (3) the amount in controversy exceeds $5 million. Plaintiff moves to remand, arguing only that the amount in controversy does not exceed $5 million.

1

For the following reasons, resolution of Plaintiff's motion to remand will be delayed pending Defendant's submission of notice of intent to submit supplemental briefing and evidence or notice of intent not to do so.

## II. Background

Plaintiff and the putative class are a group[1] California non-exempt employees who worked in Defendant's warehouse between December 7, 2012 to present. Plaintiff's claims arise from three factual allegations: (1) Defendant "incorrectly listed many rates of pay as '0.00'" in wage statements, (2) Plaintiff and class members often worked more than 40 hours per week and were not correctly paid overtime wages, and (3) Plaintiff and class members "for at least a portion of the liability period" were paid "meal period premium payments in increments of one-half one hour" rather than one additional hour of pay as required by California Labor Code section 226.7. Compl. at ¶¶ 10-12. As a result of those underlying factual allegations, Plaintiff has alleged five causes of action: wage statement violations, failure to pay all overtime wages, meal period violations, waiting time penalties, and violations of California's unfair competition law ("UCL").

Based on those allegations, Plaintiff sets out four subclasses: a wage statement subclass, an overtime subclass, a meal period subclass, and a waiting time subclass. Defendant estimated the amount in controversy at issue for each subclass and the likely recoverable about of attorney fees:

| Claim | Amount in Controversy |
|---|---|
| Wage Statement Violations | **$560,500** |
| Failure to Pay All Overtime Wages | **$1,176,140** |
| Failure to Pay All Meal Period Premium Pay | **$1,852,420** |
| Waiting Time Penalties | **$1,010,520** |

---

[1] Plaintiff asserts that the class is comprised of at least three hundred employees and former-employees. Compl. at ¶ 15. Defendant indicates that during the class period it employed a total of approximately 1,493 non-exempt warehouse employees in California. Doc. 1-4, Declaration of Angela Gannon ("Gannon Decl.") at ¶ 4, It presently employs at least 1,001 warehouse employees in California. *Id*. at ¶ 5. On average, Defendant employed approximately 542 warehouse employees at any given time during the class period. *Id.*

| Attorneys' Fees | $1,149,895 |
|---|---|
| **Total** | **$5,749,475** |

Plaintiff takes issue with the calculation of the meal period premium pay.[2] Defendant calculated the amount in controversy regarding the meal period subclass as follows: Defendant noted that Plaintiff alleged that he was "paid meal period premium pay in only half of an hour increments [rather than] a full hour of pay as required by [California] Labor Code section 226.7." Doc. 1 at 9. Accordingly, Defendant set out to calculate the remainder due under Labor Code section 226.7 by calculating using half of the present minimum wage, to wit, $5.25 per hour. Defendant went on to "assume … that each putative class member failed to be provided with a compliant meal period at least three times per week." *Id*. Next, Defendant calculated that the class period lasted 217 weeks. Finally, because Defendant employed an average of approximately 542 workers (although the actual number seems to have varied greatly) it used that number in the calculation. In sum, Defendant's calculation was $5.25 per hour * three occurrences per week * 217 weeks *542 employees, for an amount in controversy for this claim of $1,852,420.

### III. Legal Standard

Federal courts are courts of limited jurisdiction. *See Gunn v. Minton,* ---U.S.----, 133 S.Ct. 1059, 1064 (2013). An action may only be removed to federal court if the court has original jurisdiction over the action. 28 U.S.C. § 1441. CAFA confers original federal diversity jurisdiction over putative class actions where (1) the amount in controversy exceeds $5,000,000, (2) the number of putative class member is not less than 100, and (3) any class member is a citizen of a different state as any defendant. 28 U.S.C. § 1332(d)(2), (5)(B); *Dart Cherokee Basin Operating Co., LLC v. Owens*, ---U.S. ----, 135 S.Ct. 547, 551 (2014).

"To remove a case from state court to federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart*, 135 S.Ct. at 551 (quoting 28 U.S.C. § 1446(a)). As with any other removal, "under CAFA[,] the burden of establishing removal jurisdiction remains … on the proponent of federal

---

[2] Defendant calculated attorney fees are as 25% of the recovery amount. An error in calculating the value of the meal period claim would impact the attorney fee calculation.

3

jurisdiction." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir.2006) (per curiam); *accord Washington v. Chimei Innolux Corp*, 659 F.3d 842 (9th Cir. 2011). "A defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart*, 135 S.Ct. at 553. The notice of removal may rely on the allegations of the complaint and need not be accompanied by any extrinsic evidence. *Id.*; *Ibarra v. Manheim Investments, LLC¸* 775 F.3d 1193, 1197 (9th Cir. 2015).

However, if a plaintiff challenges a defendant's CAFA-premised removal, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart*, 135 S.Ct. at 551; *Ibarra*, 775 F.3d at 1197 ("The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'") If the proponent of federal jurisdiction cannot show by a preponderance of the evidence that the amount-in-controversy exceeds the $5,000,000 threshold, the court is without CAFA jurisdiction. 28 U.S.C. § 1332(d)(2). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction" the court must remand the action. 28 U.S.C. § 1447(c).

## IV. Discussion

Plaintiff takes issue with three portions of Defendant's meal period claim calculation: (1) Defendant assumed a violation rate without any evidence to support its assumption, (2) Defendant's amount in controversy calculation was premised upon the total number of possible meal period violations (based on the assumed violation rate) rather than the number of unpaid meal period premiums owed, and (3) Defendant based its calculation on the present minimum wage, not the then-applicable minimum wage. The Court only addresses the first concern.

**A. Overview of Plaintiff's Meal Period Premium Claim**

The California Labor Code requires that employees be paid for all hours worked. Cal. Labor Code § 1194. It also requires that non-exempt employees be provided with a meal period of not less than thirty minutes for every five hours worked. Cal. Labor Code § 512. If an employer fails to provide any employee a meal break, it must pay the employee an additional

4

hour of pay—a premium wage—at the employee's regular rate. Cal. Labor Code § 226.7(c). An employer is required only to permit its employees to take (and not discourage them from taking) a statutorily mandated meal break; it is not required to "police meal breaks and ensure no work thereafter is performed." *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1040 (2012). Although an employee working through his or her meal break with the knowledge of his employer would entitle that employee to pay for the time worked, that information alone will not subject an employer to liability for premium pay for failure to provide a meal break. *Brinker*, 53 Cal.4th at 1040; *see Cole v. CRST, Inc.*, 2017 WL 1234215, *4 (C.D. Cal. Mar. 30, 2017); *Roberts v. Trimac Transportation Servs. Inc.*, 2013 WL 4647223, *2 (N.D. Cal. Aug. 28, 2013).

Plaintiff claims that "[d]uring [his] employment … he [was] paid meal period premium payments … when he was not provided with a meal break." Compl. at ¶ 12. "For at least a portion of the liability period rather than paying Plaintiff 'one additional hour of pay' … Defendants only paid these meal period premium payments in increments of one-half of one hour." Compl. at ¶ 12. Plaintiff alleges that the policy of underpaying meal period premiums was applied uniformly, i.e., it was applied to all class members. Compl. at ¶ 17. However, Plaintiff's complaint is devoid of any indication of how frequently Defendant failed to provide him (or class members) with a meal break. *Cf*. Compl. at ¶¶ 10 (suggesting a failure to comply with wage statement requirements during the entirety of Plaintiff's employment with Defendant), 11 ("Plaintiff routinely worked in excess of eight hours per day….") Plaintiff's complaint is also silent regarding the portion of the class period when he was paid only a partial premium wage. Plaintiff's allegation can best be summarized: sometimes Plaintiff was not provided a meal period. When not provided a meal period he was paid a premium wage. During some portion of the class period, the premium wage was improperly paid in a half of an hour denomination.

**B. Violation Rate**

1. Is Defendant's Assumed Violation Rate Reasonable in Light of the Allegations of the Complaint?

Because Plaintiff provides no detail regarding the frequency of missed meal breaks or the period of improper partial payment of premium wages, Defendant assumes a violation rate.

Specifically, Defendant assumes that three times per week, for the entire duration of the class period, a meal period was denied and only a half of an hour of premium wage was paid. Defendant bases the violation rate that used for its amount in controversy calculation on what it characterizes as Plaintiff's "descri[ption] [of a] class-wide 'uniform practice' spanning the alleged four-year class period." Doc. 11 at 11. Defendant contends it "could reasonably have assumed," based on the allegations of the complaint, "up to two defective meal breaks per day, or ten per five-day work week." *Id.* (citing, *inter alia*, *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755 (C.D. Cal. May 21, 2015); *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504 (E.D. Cal. May 1, 2007)).

As a preliminary matter, a removing defendant is certainly permitted to make reasonable inferences or assumptions from the allegations of the complaint (and from any evidence submitted). *LaCross v. Knight Tranp. Inc.*, 775 F.3d 1200, 1202-1203 (9th Cir. 2015) (citing *Ibarra*, 775 F.3d at 1199. However, violation rates cannot be "pull[ed] … out of thin air." *Rutledge v. Healthport Technologies, LLC*, 2017 WL 728375, *2 (N.D. Cal. Feb. 24, 2017) (citing *LaCross*, 775 F.3d at 1201, 1202-1203); *accord Ibarra*, 775 F.3d at 1199.

Where the violation alleged is a result of a universal policy or practice, it may be a reasonable assumption that the policy or practice impacted all class members. *Rutledge*, 2017 WL 728375 at *2. For instance, it is reasonable to understand from Plaintiff's complaint that *all* class members were, for some period within the class period (or even most of the class period), subjected to the policy of being paid only partial premium wages when they were denied meal breaks. *Id*. However, no part of Plaintiff's complaint speaks to the frequency of the alleged meal period denials. No reasonable inference can be drawn from the complaint regarding the frequency of meal period denials. *See Ibarra*, 775 F.3d at 1199 ("While it is true that the complaint alleges that [the defendant] maintains 'an institutionalized unwritten policy that mandates' the employment violations alleged in the complaint, including the denial of meal and rest periods, this does not mean that such violations occurred in each and every shift."); *Garibay v. Archstone Communities LLC*, 539 Fed.Appx. 763, 764 (9th Cir. 2013); *Rutledge*, 2017 WL 728375 at *2 (rejecting an assumed violation rate as too speculative where the complaint was

6

silent on the issue and no evidence was submitted).

The Court has reviewed the authorities that Defendant cites for the proposition that it may assume a 100% violation rate. First, Defendant points to *Muniz*, 2007 WL 1302504, where the court outlines the contours of the plaintiff's complaint: "plaintiff alleges a common course of conduct in violation of the law resulting in injury to herself and every other hourly employee...." *Muniz*, 2007 WL 1302504 at * 4. The plaintiff in *Muniz* alleged that she was "not always provided lawful meal periods" or "rest periods." *Id*. The *Muniz* court went on to note that "plaintiff include[d] no fact-specific allegations that would result in a … violation rate that is discernably smaller than 100%." *Id*. The Court reasoned that the plaintiff was "master of the complaint" and her failure to make clear the violation rate allows for assumption of a 100% violation rate. *Id.* However, that assumed violation rate was not central to the holding. The *Muniz* court explained that "even assuming a far less than a 100% violation rate still results in an amount in controversy that exceeds the jurisdictional minimum" based on the evidence that the defendant submitted. *Id*.

More to the point, applying an assumed 100% violation rate where no underlying facts exist to the support that conclusion, relying exclusively on the reasoning that the complaint does not restrict the violation rate to a rate that is discernably smaller than 100% so 100% is appropriate, appears to improperly shift the burden of establishing subject matter jurisdiction to the opponent of federal jurisdiction. *See Ibarra*, 775 F.3d 1193 (rejecting an assumed 100% meal period violation rate— i.e., daily violations for every employee—despite the plaintiff's allegation of a uniform policy because no evidence was submitted to support a finding of frequency of meal period violations); *Amaya v. Consolidated Container Company LP*, 2015 WL 4574909, *1-2 (C.D. Cal. 2015) *Vasserman v. Henry Mayo Newhall Memorial Hosp.*, 65 F.Supp.3d 932, 982 (C.D. Cal. Dec. 5, 2014) (relying in part on the now-rejected "strong presumption against removal jurisdiction" in the CAFA context); *see also Dart*, 135 S.Ct. at 554 (rejecting an antiremoval presumption in cases invoking CAFA); *cf. LaCross*, 775 F.3d at 1202 (accepting a 100% violation rate for unreimbursed business expenses where none of the class members were reimbursed because they were classified as independent contractors but plaintiff alleged that all

7

of the class members should have been classified as employees, entitling them to reimbursement).

This Court does not reject application of an assumed 100% violation rate in all circumstances. As the Ninth Circuit has suggested, a plaintiff's allegation defendant "universally, on each and every shift, violates labor laws by not giving rest and meal breaks" would give rise to a 100% violation rate presumption. *Ibarra*, 775 F.3d at 199 (suggesting that an allegation that a defendant "universally, on each and every shift, violates labor laws by not giving rest and meal breaks" might give rise to a 100% violation rate presumption).

Here, the Court declines to assume a 100% meal period violation rate based on the allegations of the complaint. The allegations of the complaint do not speak to frequency. An assumption that meal period violations took place every day is unreasonable as a matter of law.

2. Does the Evidence Submitted Support the Alleged Violation Rate?

Although the 100% meal period violation rate is not reasonably assumed from the complaint, a defendant may submit evidence to establish a violation rate. *Dart*, 135 S.Ct. at 551; *Ibarra*, 775 F.3d at 1199-1200 (explaining that a procedure should be set for parties to submit proof of the amount in controversy but declining to set such a procedure); *see also Dobbs v. Wood Group PSN*, *Inc.*, 201 F.Supp.3d 1184, 1189 (E.D. Cal. Aug. 16, 2016) (permitting sampling employee data on violation rates from a representative group and extrapolating a projected violation rate for the entire class). Defendant has submitted no evidence to establish frequency of meal period violations.[3]

In addition to challenging the reasonableness of Defendant's assumed meal break violation rate, Plaintiff submitted evidence relating to the frequency of Defendant's meal period denials as to Plaintiff.[4] Specifically, Plaintiff provides two wage statements. Doc. 8-1 at 5, 7. The

---

[3] Defendant did submit evidence along with its notice of removal but none of that evidence speaks to frequency of meal period violations. *See generally* Gannon Decl. For instance, Defendants have submitted evidence regarding the number of employees it employs, the number of employees that it has terminated in the class period, the average hourly wage on the date Plaintiff was terminated, Defendant's pay schedule, and that warehouse employees are generally regularly schedule to work eight-hour shifts. Gannon Decl. at ¶¶ 4-9.

[4] Defendant raised various objections to Plaintiff's submission. None are well taken. Defendant's suggestion that "Plaintiff's attempt to submit purported 'evidence' at the remand stage improper" is clearly wrong in light of the Supreme Court's guidance in *Dart* and the Ninth Circuit's remand for the district court to consider exactly that kind

first wage statement, dated November 22, 2013, indicates that two hours of "meal / rest penalty" payments were paid so far that year but Plaintiff was paid only a total of $13.18, the hourly rate then paid to Plaintiff for a single hour of work. Doc. 8-1 at 5. The second wage statement, dated January 31, 2014, indicates that one hour of "meal / rest penalty" were paid for a total of $14.44, the hourly rate paid to Plaintiff for a single hour of work. Doc. 8-1 at 7.

The Court recognizes the tension created by forcing a defendant to submit evidence to prove how often it violated the labor code in order to establish subject matter jurisdiction—it asks defendant to shoot itself in the foot before it may walk through the door. *See Amaya*, 2015 WL 4574909 at *2 ("[D]efendants should not be required to fall on their swords to establish the propriety of removal jurisdiction.") The same is true of a plaintiff seeking to avoid CAFA jurisdiction. Indeed, in this action, Plaintiff's submission of evidence reflects the problem created by the tension. Rather that submitting a declaration by Plaintiff that he was only incorrectly paid for two meal periods—a conclusion that appears to be supported by the wage statements submitted, Doc. 8-1 at 5, 7,—Plaintiff's counsel submits two of plaintiff's wage statements and appears to be carefully avoiding any sort of commitment regarding how many times Plaintiff was actually improperly paid for meal periods. *See* Doc. 8-1 at 2 ("Aside from these two payments, Plaintiff is not currently aware of any other meal period premium payments that he received in half-hour increments.") Class action plaintiffs seeking to avoid removal to federal court are faced with some perverse hybrid of a Goldilocks situation mixed with a shell game: allege enough to make the claim worth litigating but not so much that the claim is removable and never commit to a precise figure. The tension at issue and the early stage of the litigation explain but do not excuse the kind of purposeful imprecision found here.

Form of counsel's submission aside, viewing the evidence submitted in combination with Plaintiff's allegation that he was paid some premium wage for every meal period denied tends to

---

of evidence in relation to a motion to remand in *Ibarra*. *Dart*, 135 S.Ct. at 551; *Ibarra*, 775 F.3d at 1199-1200. Similarly, Defendant's suggestion that the Court should not consider the evidence because it is unauthenticated is unpersuasive. Authentication is important because it establishes the genuineness of a document; that it is what it purports to be. *See Polk v. FBI*, 2016 WL 393170, *3 (N.D. Cal. Feb. 2, 2016) (citing FRE 901). Defendant produced the document that it now objects to the authenticity of. *See* Doc. 11 at 16 ("If they are indeed Plaintiff's payroll records…") If the document was altered, Defendant would know it. Defendant's objection is not well taken.

9

1 suggest that meal period denials (at least as to Plaintiff) took place substantially less frequently
2 than three times per week. The Court is left in what appears to be a common position in
3 challenges to the amount-in-controversy in CAFA cases—the court cannot accept a 100%
4 violation rate based on the allegations of the complaint and evidence submitted, but no
5 alternative rate is clear. *See*, *e.g.*, *Duberry v. J.Crew Group, Inc.*, 2015 WL 4575018 (C.D. Cal.
6 July 28, 2015) ("What remains unclear is how to resolve cases in the middle…. The life of this
7 law will be experience, not logic—in the meantime, these in-between cases will turn on context
8 and fact-specific considerations.") The evidence necessary to make the fact-specific
9 determination is absent.

  This Court will permit Defendant to submit evidence in support of its assumed three-violations-per-week rate of meal period denial. Defendant may also submit evidence to support its assumed entire-duration-of-the-class-period underpayment of premium wages rate. In absence of that evidence, the Court cannot conclude that the $5,000,000 amount in controversy requirement has been proven by a preponderance of the evidence. Defendant must give notice of its intent to submit evidence or notice of its intent not to submit evidence within fourteen days of the date of this order.

///
///
///

10

**V. Order**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant must submit notice of intent to file supplemental briefing and evidence or notice of intent not to do so within fourteen days of the date of this order;

    a. If Defendant elects to submit supplemental briefing and evidence, Defendant must submit any such additional briefing and evidence in support within sixty days of the date of this order.

    b. If Defendant files a notice of intent not to file supplemental briefing or fails to respond within fourteen days, this action will be remanded to the Tulare County Superior Court without further opportunity to be heard.

IT IS SO ORDERED.

Dated: April 24, 2017

_____
SENIOR DISTRICT JUDGE